IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KATRINIA L. GREEN, by and for the Estate of GLORIA GENE WRIGHT, </br></br>    Plaintiff, </br></br>   v. </br></br> ANDREW SAUL, Commissioner of Social Security Administration,[1] </br></br>    Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) CV 318-073 </br> ) </br> ) </br> ) </br> ) </br> ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.   **BACKGROUND**

Plaintiff applied for DIB and SSI on January 21, 2015, alleging a disability onset date of January 10, 2015. Tr. ("R."), pp. 104-05, 203-15. Plaintiff was sixty-one years old at her alleged disability onset date, began receiving social security retirement benefits at age sixty-two, and was

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Andrew Saul, Commissioner of Social Security Administration, as the proper Defendant.

sixty-four years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 27, 56, 187. Plaintiff died in March of 2019 from exacerbation of chronic obstructive pulmonary disease (COPD) and complications of congestive heart failure. (Doc. no. 14-2, p. 1.) Plaintiff alleged disability based on the following conditions: diabetes, chronic heart failure, arthritis, potassium, cholesterol, muscle spasms, a nerve condition, high blood pressure, depression, and pain. R. 242. Plaintiff completed high school, and prior to her alleged disability date, had accrued a work history that included jobs as a cook and sewing machine operator, although Plaintiff's only past relevant work for purposes of her disability applications was as a cook. R. 26, 58, 241, 243.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 104-05, 136-37. Plaintiff requested a hearing before an ALJ, (R. 159-60), and the ALJ held a hearing on November 9, 2017. R. 33-62. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Tina Baker-Ivey, a Vocational Expert ("VE"). Id. On February 7, 2018, the ALJ issued an unfavorable decision. R. 12-32.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 10, 2015, the alleged onset date (20 C.F.R. §§ 404.1571 et seq. and 416.971 et seq.).

2. The claimant has the following severe impairments: osteoarthritis and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except she can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders; and she should avoid concentrated exposures to hazards.[2] The claimant is capable of performing past relevant work as a cook. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 17-26.

Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 10, 2015, through the date of the decision, February 7, 2018. R. 27. When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred by (1) failing to formulate an RFC properly accounting for the opinions of a treating physician and state agency medical consultant, as well as Plaintiff's need to use an oxygen tank; and (2) failing to identify all of Plaintiff's severe impairments at step two of the sequential process. See doc. no. 15 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 17 ("Comm'r's Br.").

---

[2]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

## II.	STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Failure to Identify Multiple Severe Impairments in Addition to Osteoarthritis and Obesity Does Not Warrant Remand

Plaintiff argues diabetes, hypertension, and COPD should have been identified as severe impairments.  Pl.'s Br., pp. 9-10.  Plaintiff further argues the ALJ's failure to identify diabetes and hypertension as severe impairments at step two was not harmless error because if they had been included, Medical-Vocational Rule 201.02 and 202.02 of Appendix 2 to Supbpart P of Part 404 (the "Grids") would direct a finding of disabled.  Id. at 9.  The Court disagrees.

First, because of the limitations the ALJ determined impacted Plaintiff's ability to perform medium work, use of the Grids is precluded.  See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) ("[E]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." (citations omitted).)  Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that

impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

The ALJ's RFC included limitations on climbing stairs, balancing, stooping, kneeling, crouching, crawling, climbing ladders, and avoiding concentrated exposures to hazards. R. 19. The ALJ also limited his hypothetical to the VE, upon which he relied to determine Plaintiff could perform her past relevant work as a cook, to a person lifting and carrying twenty-five to thirty pounds. R. 58. Thus, the Grids are inapplicable.

Second, SSR 02-1p recognizes, "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body system." SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). Although not delineated as severe, the ALJ identified and analyzed at length Plaintiff's treatment for diabetes and hypertension, as well as Plaintiff's allegations of arthritis and pain in her knees, hands, neck, arms and legs. R. 20-24. The ALJ also discussed Plaintiff's hospitalization in June 2017 and resultant diagnosis of COPD, acutely exacerbated by pneumonia that was treated with antibiotics and bronchodilator treatment, ultimately finding Plaintiff's respiratory health was fair enough to not require oxygen supplementation as Plaintiff alleged. R. 23 (citing R. 540-42); R. 24.

In any event, a diagnosis of a particular disorder does not automatically equate to a "severe" impairment. Rather, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213

6

n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005). Cardiovascular and musculoskeletal impairments such as diabetes, hypertension, COPD, and joint pain are conditions which are associated with obesity, (SSR 02-1p, at *3), which was identified as a severe impairment. R. 17. Thus, while not labeled as "severe impairments" at step two, the ALJ clearly considered the conditions about which Plaintiff now complains in continuing the sequential process and formulating the RFC. Accordingly, Plaintiff's step two argument forms no basis for remand. See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (finding no error at step two where ALJ identified status-post cervical fusion but not separately diagnosed chronic back pain as a severe impairment because ALJ continued on to consider all impairments in combination, including claimant's subjective complaints, limitations, and diagnoses related to pain during remaining steps of sequential process).

  B.  **The RFC Is Supported by Substantial Evidence**

    1.  **Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). As explained above, there

are three categories of limitations: exertional, non-exertional, and a combination of exertional and non-exertional limitations. Baker, 384 F. App'x at 894.

### 2. Assigning Weight to Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips, 357 F.3d at 1241 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

8

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5), 416.927(c)(1)-(2), (5). Under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

### 3. The ALJ Properly Discounted the Opinion of Treating Physician, Dr. Marybell Vaughn

Plaintiff argues the ALJ failed to accord proper weight to the opinion of Dr. Vaughn, a treating physician. In particular, Plaintiff argues the ALJ should have included work-related limitations contained in a medical source statement and questionnaire completed by Dr. Vaughn on December 16, 2015. Pl.'s Br., pp. 6-7 (citing R. 525-49). Dr. Vaughn opined Plaintiff (1) had uncontrolled depression and foot neuropathy; (2) was limited to carrying ten pounds both occasionally and frequently; (3) had intermittent moderate vertigo, shortness of breath with exertion, arthritis, neck, and back pain (4) was limited to standing and walking for two hours in an eight-hour workday; (5) must be able to alternate sitting and standing to relieve pain; (6) had a limited ability to push and pull, could only occasionally kneel, crouch, crawl, and stoop, and could never climb or balance; and was limited in reaching, handling,

9

fingering, feeling, and vision; and (7) was limited to all environmental factors due to cold effect on feet and joints and fumes and dust flares on breathing. R. 525-30. Confusingly, Dr. Vaughn answered "yes" to the question of whether Plaintiff met a Listing, but did not identify which Listing, and Dr. Vaughn answered "yes" to the question asking if Plaintiff did *not* meet a Listing, did she equal a Listing, again not identifying any particular Listing equivalency. R. 525. Moreover, despite instructions in bold, capital letters to describe the factors supporting the assessment, Dr. Vaughn did not complete the portions of the form asking for, "Explanation, if any" for the stated exertional or standing/walking limitations. R. 527-28. Nor did Dr. Vaughn provide a description of medical/clinical findings supporting her stated postural and manipulative limitations. R. 527-29.

The ALJ afforded "little evidentiary weight" to Dr. Vaughn's cursory opinions on the medical source statement and questionnaire limiting Plaintiff's exertional capabilities to sedentary work, pointing out the opinions are contradicted by Dr. Vaughn's treatment records and other record evidence, including Plaintiff's self-reported activities of daily living. R. 26. As the Commissioner points out, neither Dr. Vaughn, nor Plaintiff in her briefing, explained how Dr. Vaughn's treatment records support such severe limitations. Comm'r Br., p. 9. To the contrary, the record reflects routine visits and lab work, with Plaintiff not in any acute distress. R. 434-59 (e.g., R. 437-38: May 27, 2015, 3-month follow up, no diabetes complaints, here for repeat labs, denies chest pain and shortness of breath, no acute distress); 475-88 (e.g., R. 477-78: Sept. 25, 2015, follow up visit, pain after car wreck, no diabetes complaints/much better, denies chest pain and shortness of breath, no acute distress); 507-08 (lab work); 532-38.

As noted by the ALJ, (R. 26), records from a new primary care physician, Dr. Israel Bryson, who treated Plaintiff after Dr. Vaughn, did not indicate any significant functional limitations. R. 588-96 (e.g., R. 588-90: Sept. 5, 2017, follow up visit, denies chest pain, denies joint or muscle pain, pain scale 0, alert, oriented and comfortable, WITH TODDLER IN LAP (emphasis in original); R. 592: July 24, 2017, denies chest pain, denies joint or muscle pain, unable to exercise due to babysitting, TODDLER IN LAP (emphasis in original)).

Moreover, as explained above, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213 n.6. Dr. Vaughn's treatment notes also show Plaintiff taking a list of medications to control her medical issues. In the Eleventh Circuit, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citations omitted); Duval v. Comm'r of Soc. Sec., 628 F. App'x 703, 709-11 (11th Cir. 2015) (*per curiam*) (affirming ALJ's reliance on medication controlling claimant's symptoms as basis for discounting both physician opinion and claimant's subjective complaints). Thus, the records discussed in detail by the ALJ, (R. 21-25), evidencing conservative treatment and conditions controlled with medication also provide a basis for properly discounting Dr. Vaughn's opinion.

Plaintiff further argues the ALJ improperly relied on Plaintiff's ability to perform a wide range of daily activities in discrediting the opinion of Dr. Vaughn, contending an admission of participation in daily activities does not preclude a disability finding. Pl.'s Br., p. 7 (citing R. 18). While Plaintiff correctly states the general statement of law, see Davis-Grimplin v. Comm'r, Soc. Sec. Admin., 556 F. App'x 858, 863 (11th Cir. 2014), that general

principle does not prohibit an ALJ from considering a claimant's daily activities when considering how much weight to afford a treating physician's opinion.  See Phillips, 357 F.3d at 1241; see also May v. Comm'r Soc. Sec. Admin., 226 F. App'x 955, 959 (11th Cir. 2007) (*per curiam*) (concluding participation in daily activities for short durations does not disqualify claimant from disability, but "that does not mean it is improper for the ALJ to consider a claimant's daily activities at all").

Thus, in addition to discrediting Dr. Vaughn's opinions in the questionnaire based on inconsistency within her own treatment records and with other record evidence as described above, the ALJ permissibly considered Plaintiff's social interactions with family and friends, attendance at church service, grocery shopping, and babysitting a two-year-old toddler (with multiple notations of the same in doctor treatment notes).  R. 18, 25, 26.  As noted by the ALJ, Plaintiff told consultative examiner Michael P. Rose, Ph.D., she helped with chores, including sweeping and mopping floors, fixing simple meals, washing dishes, cleaning bathrooms, wiping off counters, dusting, making beds, grocery shopping, and picking up and organizing around the home, all of which undermine Dr. Vaughn's opinion Plaintiff can perform no more than sedentary work activities.  R. 25, 26, 462.

In sum, the ALJ's decision not to include the severe work-related limitations contained in the medical source statement and questionnaire completed by Dr. Vaughn on December 16, 2015, is supported by substantial evidence and forms no basis for remand.

### 4. The ALJ Properly Considered the Opinions of State Agency Medical Consultants

Plaintiff also argues the ALJ erred in formulating the RFC because he gave "significant weight" to a state agency medical consultant's opinion Plaintiff could perform

light work, with restrictions on lifting and carrying up to twenty pounds occasionally and ten pounds frequently, but did not formulate an RFC consistent with that finding. Pl.'s Br., pp. 7-8. Plaintiff does not identify the consultant by name, but based on the citations to the record, (R. 86-87, 99-100), the Court presumes she refers to Dr. Stuart Katz and his opinions dated March 18, 2015. Notably, however, the ALJ's opinion references the medical opinions of state agency consultants through the date of reconsideration, February 2016, and cites the later opinions of Dr. George Walker dated February 10, 2016, which found Plaintiff could perform a modified range of medium work. R. 25 (citing Exs. 5A & 6A (R. 106-35)).

As explained above, SSR 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. 1996 WL 374180, at *1. However, the weight afforded to a non-examining physician's opinion depends, *inter alia*, on the extent to which clinical findings support it and consistency with other evidence. Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011) (*per curiam*). Here, the ALJ determined the state agency consultant's opinions through February 2016 provided a thorough assessment of the record evidence and were generally consistent with the same such that Plaintiff could perform her past relevant work as a cook, at a modified range of medium work. R. 25. Indeed, Plaintiff testified at the administrative hearing her prior work as a cook involved routinely lifting twenty-five to thirty pounds of vegetables per day, (R. 38), and those weight limitations were included in the hypothetical presented to the VE, upon which the ALJ relied to conclude Plaintiff could perform her past relevant work as actually performed. R. 58-59.

Although Dr. Katz did opine in March 2015, Plaintiff had an RFC for light work, he did not have the benefit of all the medical records, including those of Dr. Vaughn and Dr. Bryson as discussed above.  Dr. Walker's review on reconsideration had the additional records through February 2016 to consider, and the ALJ was able to consider those findings against the entire record, including additional medical records post-dating February 2016 and Plaintiff's testimony at the administrative hearing.  The ALJ was not limited to Dr. Katz's opinion from March 2015, and instead relied on the entirety of the record, including Dr. Walker's opinion in February 2016, to conclude Plaintiff could perform her past relevant work as a cook, at a modified range of medium work.

### 5. The ALJ Was Not Required to Include Use of an Oxygen Tank in the RFC

Plaintiff also argues the ALJ erred in formulating the RFC because he did not include use of an oxygen tank. Pl.'s Br., p. 8.  When Plaintiff appeared at the administrative hearing on November 9, 2017, with an oxygen tank, she informed the ALJ she had been using it since her hospitalization in May or June of that same year. R. 39.  In his written decision, the ALJ directly addressed the use of "a large O2 tank that she wheeled into the hearing room," but concluded the record did not establish "the O2 supplement is medically necessary."  R. 24.  Plaintiff argues the conclusion is incorrect because, during a July 17, 2017 visit with Dr. Bryson, he noted oxygen is necessary if Plaintiff walks anywhere, and she ultimately died in March of 2019 due to COPD exacerbation and complications of congestive hear failure. Pl.'s Br., p. 8.

As the ALJ explained, Plaintiff was hospitalized in June 2017, when she "was found to have acute COPD exacerbation with pneumonia that was treated with antibiotics and

14

bronchodilator treatment and remained stable." R. 23 (citing 540-42). The hospital doctor explained to Plaintiff and her family that her morbid obesity was mainly responsible for many of her conditions that resulted in the hospitalization. R. 542. Upon follow up with Dr. Bryson on July 17, 2017, treatment notes state Plaintiff needed oxygen if she tried to walk anywhere. R. 24 (citing R. 599). However, on July 24, 2017, there was no mention of an oxygen supplement, and Plaintiff's lungs were clear to auscultation bilaterally and good air exchange. R. 24 (citing R. 594). Again, during a September 5, 2017 follow up, Dr. Bryson's notes do not mention an oxygen supplement; Plaintiff denied chest pain, edema, palpitations, joint or muscle pain, shortness of breath and wheezing; and Plaintiff was described as alert, oriented, and comfortable with a toddler in her lap. R. 588-90.

Although the Court is sympathetic to Plaintiff's passing in March 2019 from COPD exacerbation and complications of congestive heart failure, the record before the ALJ in 2017 did not show oxygen was medically necessary. The first appearance in the record of the need for oxygen was admission to the hospital in June 2017, approximately five months prior to the administrative hearing in November 2017, and a period of time well less than the consecutive twelve-month period required to establish a medically determinable impairment prevented substantial gainful activity. See Stone v. Comm'r of Soc. Sec. Admin., 596 F. App'x 878, 879 (11th Cir. 2015) (*per curiam*). Plaintiff alleges the record is "replete with evidence of COPD, shortness of breath, and an inability to walk for extended periods of time," but the records she cites cover only the few months from hospital admission in June 2017 through a September 5, 2017 visit with Dr. Bryson. Pl.'s Br., p. 9 (citing R. 541, 546-48, 587-88, 597-99). As discussed herein, those records do not support a conclusion that an oxygen supplement was medically necessary. As the ALJ conclusion an oxygen supplement was not medically necessary is

15

supported by substantial evidence, Plaintiff's argument about an inability to return to past relevant work as a cook because of the dangers of oxygen around an open flame, (Pl.'s Br., p. 9), forms no basis for remand.

In sum, Plaintiff has not met her "very heavy burden . . . to show an inability to perform past relevant work." Hutchinson v. Astrue, 408 F. App'x 324, 327 (11th Cir. 2011) (*per curiam*) (citing Moore, 405 F.3d at 1211).  The ALJ's assessment of Plaintiff's RFC, and thus her ability to return to past relevant work as a cook, at a modified range of medium work, is supported by substantial evidence.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of August, 2019, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA